No. 14-14426

UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT
_____

DANA'S RAILROAD SUPPLY, *et al.*,

Plaintiffs/Appellants,

TIFFANY BALLARD,

Plaintiff,

v.

PAMELA JO BONDI, in her
official capacity as Attorney General
of the State of Florida,

Defendant/Appellee.
_____

On Appeal from the United States District Court
for the Northern District of Florida
_____

**SUPPLEMENTAL APPENDIX**
_____

                        PAMELA JO BONDI
                        ATTORNEY GENERAL
                        Allen Winsor (FBN 016295)
                          Solicitor General
                        Osvaldo Vazquez (FBN 070995)
                          Deputy Solicitor General
                        Office of the Attorney General
                        The Capitol, PL-01
                        Tallahassee, Florida 32399-1050
                        (850) 414-3681

# INDEX of SUPPLEMENTAL APPENDIX

Docket/Tab #

Exhibit A to Motion to Dismiss ............................................................................ 9-1

Certificate of Service

# Tab 9-1

# Exhibit A to Motion to Dismiss

# Exhibit A

STORAGE NAME: fsa-hb448

Date: June 18, 1987

HOUSE OF REPRESENTATIVES
COMMITTEE ON COMMERCE
FINAL STAFF ANALYSIS

COPY
reproduced by
FLORIDA STATE ARCHIVES
DEPARTMENT OF STATE
R.A. GRAY BUILDING
Tallahassee, Florida 32399-0250
Series ___ Carton ___
File Folder ___

ENACTED BILL #: HB 448

RELATING TO: Credit Card Surcharge

SPONSOR(S): Representative Arnold

EFFECTIVE DATE: October 1, 1987

BECAME LAW: May 21, 1987

CHAPTER 87-43, LAWS OF FLORIDA

COMPANION BILL(S): SB 509

OTHER COMMITTEES OF REFERENCE: (1) None

(2) _____

**********************************************************

## I. SUMMARY:

House Bill 448 creates an act which prohibits a seller or lessor from imposing higher prices on credit card purchasers than on cash purchasers through the use of a "surcharge." However, the proposed legislation does not prohibit the offering of discounts for payment by cash or other similar means. Moreover, House Bill 448 is not applicable to charges relating to approved state or federal tariffs.

### A. Current Law & Present Situation:

The regulation of the use of credit cards is primarily under federal jurisdiction. Basically, this body of regulation is contained in Regulation Z of the Federal Reserve Board, which implements the Truth-In-Lending and Fair Credit Billing Acts, 15 U.S.C. 1601, et seq. The major focus of these provisions is to provide disclosures to consumers and to provide a method for settling billing disputes.

However, federal provisions do not address the cost of the use of credit cards. Finance charges and interest limits are not governed by the federal laws except as it relates to the proper disclosure of these terms. This authority is given to the states. In Florida, a 1.5% charge per month on the unpaid

-57-

balance, equivalent to an 18% annual percentage rate, is authorized as the maximum finance rate on credit cards.

Presently, there are no federal provisions which regulate the application of surcharges on transactions involving the use of a credit card. A federal ban on credit card surcharges was first enacted in 1976. It was extended twice but expired on February 27, 1984. Prior to 1984, federal provisions prohibited the imposing of an additional charge on cardholders who chose to use a credit card instead of paying for a sale or lease with cash or by a similar means, 15 U.S.C. 1666f (a)(2). However, several federal staff opinions were issued which did permit cash discounts under specified conditions. Limited cash discounts have been available since 1976. Since 1981 merchants have been authorized to offer unlimited discounts to cash customers. For instance, a retail purchase of gasoline where the price for a credit card purchase is the "regular price" and a lower price for a cash transaction is permitted.

In the absence of federal preemption, state laws will apply to regulate certain credit card transactions. Various provisions of Florida law govern specific aspects of the use of credit cards, particularly consumer protection and credit card fraud. The issue regarding the application of a surcharge to the purchase price is not addressed by Florida law.

Section 526.121(2), Florida Statutes, has language restricting that section from prohibiting a price differential between a cash sale and a credit sale for the same gasoline. This provision impliedly allows a cash discount for gasoline where the "regular" or advertised price is the credit card price.

Section 626.9541(1)(o)2, Florida Statutes, a provision in the Florida Insurance Code, permits a licensed insurance agent to charge and collect the amount of any discount or other fee imposed by a credit card facility in connection with the use of a credit card. This amount is in addition to the premium covering the policy. The credit card fee is designed to cover the actual costs incurred by the insurance agent relating to the use of a credit card in the insurance sales transaction.

B. Effect of Proposed Changes:

House Bill 448 prohibits surcharges being imposed against the consumer solely for electing to utilize a credit card instead of cash, check or other similar means where the seller or lessor accepts payment by credit card. The "regular" or advertised price would be the amount in which persons electing to use credit cards would pay.

Additional language in the proposed legislation specifies that the act is not applicable to the offering of a discount

Page 3
Bill # HB 448
Date: June 18, 1987

seeking to induce payment by cash, check, or similar means where the discount is offered to all perspective customers. For instance, cash discounts offered at gasoline stations would not be subject to the provisions of this act. Moreover, where charges are imposed pursuant to approved state and federal tariffs they are not deemed surcharges and, therefore, are exempt from this act.

The bill defines a "surcharge" as any additional amount imposed, at the point of sale, upon the buyer for the privilege of using a credit card to make a purchase. It is an added cost over and above the posted price of goods and services imposed by a merchant when a consumer uses a credit card. A "credit card" is defined to include those credit cards for which unpaid balances are payable on demand.

Under the bill, a violation of the act is a second degree misdemeanor. Specific language regarding punishment is provided for in s. 775.082 and s. 775.083, Florida Statutes.

II. ECONOMIC IMPACT:

   A. Public:

The provisions of House Bill 448 would benefit a customer to the extent that the price of any purchase or payment for lease could not be greater at the time of payment solely for the use of the credit card. Merchants or lessors who choose to impose a surcharge on credit card transactions would be prohibited from increasing the sales price at the time of sale if the purchases were to be made by credit card. Businesses or retailers who assess an additional charge due to the use of credit cards may experience a fiscal reduction in that the bill eliminates the right to assess such a charge.

   B. Government:

The economic and fiscal impact of House Bill 448 upon the government is anticipated to be insignificant. However, the criminal penalty of a second degree misdemeanor for violations of the act does have the potential of increasing the number of prosecutions by the Office of the State Attorney.

III. STATE COMPREHENSIVE PLAN IMPACT:

   None

IV. COMMENTS:

According to information supplied by Consumers Against Penalty Surcharges, a discount differs from a surcharge in the following manner: cash discounts provide lower prices to the consumer, immediately and directly. Surcharges add an additional tax to credit card users, at the point of sale, without any corresponding savings to the cash customer. It is not the intent of the sponsor to prohibit the current practice of offering cash discounts (e.g. cash discounts at gasoline stations).

Since the expiration of the federal law prohibiting the imposing of a surcharge on credit purchases, several states have enacted such laws. California, Colorado, Connecticut, Kansas, Maine, Massachusetts, New York, Oklahoma, Texas, and Wisconsin have legislation on the books which prohibit credit card surcharges. Maine, Massachusetts and Oklahoma had regulations prohibiting credit card surcharges under state usury or other credit-related laws prior to the expiration of the federal ban. In effect, over 35% of the U.S. population is protected against the imposition of surcharges. Additionally, there are other states which have legislation pending to address the issue. Recently, legislation was reported favorably with a unanimous vote from committee in the Senate in the state of New Jersey.

Actively supporting the sponsor of this bill is the Florida Consumers Federation, Inc. which is a non-profit statewide consumer lobbying organization representing over 130 organizations and 20,000 individual consumers in the state of Florida. According to this organization, House Bill 448 is the only way to assure basic consumer protection for both the citizens of Florida and the tourists which frequent this state. The following reasons are cited by this organization as demonstrating its support for the ban on credit card surcharges: They are inflationary, discriminatory, undermine Truth-In Lending Laws, raise usury law issues, create confusion, and impede electronic payment systems.

Additional support for House Bill 448 is provided by an organization entitled Consumers Against Penalty Surcharges (CAPS). It is a broad based coalition of national, state and local consumer organizations who oppose the imposition of surcharges on credit card purchases.

Opposing House Bill 448 and thereby becoming a proponent of current law is the Florida Retail Federation, Inc. The retail industry is opposed to legislation which outlaws surcharges on credit card use. It is believed that such legislation is both unnecessary and contrary to the best interests of consumers. The primary reason for opposing this bill is the belief that cash customers will have to subsidize purchasers who utilize credit cards. In addition, the retail industry argues that a surcharge

Page 5
Bill # HB 448
Date: June 18, 1987

ban would be "special interest" legislation benefitting a few large out-of-state credit card issuers.

Further, the National Retail Merchant Association suggests that there is no basis for distinguishing, from an economic or legal standpoint, between discounts for cash and surcharges for credit. According to this group, they are functionally the same. Also, they argue that both types of two-tier pricing can produce confusion on the part of consumers and there is a potential for abuse on the part of unscrupulous entrepreneurs.

The focus upon credit card surcharges results largely from the extent to which society employs such cards. Statistics provided by proponents of the bill reveal that over 80 million people use credit cards in this nation. In fact, over 70% of all adults utilize credit cards. More specifically, credit cards are used by 26% of adults with incomes below $10,000 and 34% of adults with incomes below $15,000. Additionally, 49% of senior citizens, 61% of people between the ages of 55 and 64, and 52% of adult women use credit cards to make purchases. Credit cards are used for convenience, safety, documentation of expenses and general record keeping, budgeting, to obtain a good credit rating, and for additional protection against defective goods and services.

V. LEGISLATIVE HISTORY:

A. Enacted Bill:

House Bill 448, by Representative Arnold, was prefiled on March 6, 1987 and referred to the Committee on Commerce. It was subreferred to the Subcommittee on Banking and Commerce and was reported favorably by the subcommittee on April 15. The Full Committee on Commerce reported the bill favorably on April 23 (HJ 00268). House Bill 448 was placed on the Special Order Calendar on April 29 and read a second time (HJ 00316). The bill was read a third time on May 4 and passed by a vote of 67-49 (HJ 00337). It was immediately certified to the Senate (HJ 0037) and received in Messages. On May 6 the bill was referred to the Senate Committee on Commerce (SJ 00261) and was immediately withdrawn. The House bill was substituted for Senate Bill 509 and passed by a vote of 38-0 (SJ 00264). On May 12 the bill was ordered enrolled and two days later was signed by the Officers and presented to the Governor (HJ 00470). The Governor approved the bill on May 21, 1987 (HJ 00570).

B. Disposition of Companion:

Senate Bill 509, by Senator Childers was prefiled on March 20, 1987 and referred to the Senate Committee on Commerce (SJ 00047). The bill was reported favorably by Commerce on April 21

Page 6
Bill # HB 448
Date: June 18, 1987

(SJ 00141). On May 6, the bill was placed on the Special Order Calendar where the House bill was substituted for the Senate bill which was laid on the table under Rule (SJ 00264).

VI.   PREPARED BY:   _____
                              Beryl D. Roberts

VII.  STAFF DIRECTOR:   _____
                              H. Fred Varn

# CERTIFICATE OF SERVICE

I hereby certify that on March 4, 2015, the foregoing Supplemental Appendix was filed with the Clerk of Court via the CM/ECF system, causing it to be served on the following counsel of record.

Deepak Gupta
Jonathan E. Taylor
Gupta Beck PLLC
1735 20th St., NW
Washington, DC  20009
(202) 888-1741

Gary B. Friedman
Rebecca Quinn
Friedman Law Group LLP
270 Lafayette St.
New York, NY  10012
(212) 680-5150

David Frank
Friedman, Frank & Abrahamsen
524 E. College Ave.
Tallahassee, FL  32301
(850) 224-4357

Diana L. Martin
Cohen Milstein Sellers & Toll PLLC
2925 PGA Blvd., Suite 200
Palm Beach Gardens, FL  33410
(561) 515-1400

Richard Alan Arnold
William J. Blechman
James Almon
Kenny Nachwalter, P.A.
201 S. Biscayne Blvd., Suite 1100
Miami, FL  33131
(305) 373-1000

Joseph M. Vanek
David P. Germaine
Vanek, Vickers & Masini, P.C.
55 West Monroe St., Suite 3500
Chicago, IL  60603
(312) 224-1500

Paul E. Slater
Sperling & Slater
55 West Monroe St., Suite 3200
Chicago, IL  60603
(312) 641-3200


*/s/ Osvaldo Vazquez*
Osvaldo Vazquez (FBN 070995)
 Deputy Solicitor General
osvaldo.vazquez@myfloridalegal.com
Office of the Attorney General
The Capitol, PL-01
Tallahassee, FL 32399-1050
Tel: (850) 414-3681